UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD VINCENT RAY, JR., | No. C 09-252 SI (PR) |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| NATHAN HOBBS and CHILD PROTECTIVE SERVICES, | |
| Defendants. | |

## INTRODUCTION

This is a federal civil rights action filed by a pro se state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff alleges that defendant Hobbs, a family maintenance worker for the Alameda County Social Services Agency, Department of Children and Family Services ("DCFS"), and defendant DCFS[1] made defamatory statements that injured plaintiff's reputation and caused him to lose parental rights, including custody of his daughter and the ability to visit with her. (Amended Complaint ("Am. Compl.") at 5–8, 10). Defendants move for summary judgment on grounds that there are no triable issues of fact and that they are entitled to summary judgment

---

[1] The agency defendant originally named in the instant matter was "Child Protective Services"; however, the correct name of the social service agency from which plaintiff seeks relief is the Alameda County Social Services Agency, Department of Children and Family Services ("DCFS"). See Order of Service at 3.

as a matter of law. (Defs.' Mot. for Summ. J. ("MSJ") at 1). For the reasons set forth below, defendants' motion is GRANTED. Judgment will be entered in favor of defendants. Plaintiff shall take nothing by way of his amended complaint.

## BACKGROUND

### I. Juvenile Dependency Petition and Proceedings Regarding Kymberly Ray

The following facts appear to be undisputed except as noted. On August 27, 2006, plaintiff's child, Kymberly Ray, was taken by police from the family home when plaintiff and his two adult children were arrested for armed robbery. (MSJ, Declaration of Alameda County Deputy County Counsel Todd Boley ("Decl. Boley"), Ex. A; Pl.'s Opp. Mot. Summ. J. ("Opp.") at 3–4). On August 29, 2006, DCFS initiated a juvenile dependency petition regarding Kymberly. (Decl. Boley, Ex. A at 11–13; Am. Compl. at 2). In the petition, child welfare worker Susan Shaddick ("Shaddick") alleged that Kymberly came within the jurisdiction of the juvenile court pursuant to § 300(b) of the California Welfare & Institutions Code. (Id.). In relevant part, this section states:

> Any child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: [...]
>
> (b)   The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse.

Cal. Welf. & Inst. Code § 300.

The dependency petition specifically stated that "[t]he mother and father, Tina and Edward Ray, have substance abuse problems that render them unable to provide appropriate care to their four-year-old daughter, Kymberly Ray . . . ." (Decl. Boley, Ex. A at 13; Am. Compl. at 3). In support of this statement, the petition listed the following allegations:

2

    a)     The father and the parents' adult children were arrested for armed robbery on August 27, 2006, and are currently incarcerated at Santa Rita Jail for multiple robberies;
    b)     The minor, Kymberly Ray, said that her father, brother and sister had been arrested for "going out robbing" and that her mother had told her this;
    c)     The mother and father have engaged in domestic violence in the presence of the minor and the minor has seen the father hit her mother in the face;
    d)     The mother says the father was court-ordered into domestic violence treatment, but he left the state and then was extradited back;
    e)     The trailer in which the family was living was without running water, toilet facilities, or a working refrigerator;
    f)     The mother admits to using crack cocaine as recently as two days ago and alcohol with the father and their adult children in a trailer where the family was living;
    g)     The mother says that she drank alcohol because the father "made her" and she was afraid she would be beaten if she did not.

(Decl. Boley, Ex. A at 13; Am. Compl. at 3).[2]

On August 30, 2006, Shaddick filed a detention report regarding Kymberly wherein Shaddick detailed the circumstances surrounding the conditions that prompted Kymberly's detention in protective custody. (Decl. Boley, Ex. A at 1–10). These circumstances supported Shaddick's statements in the dependency petition. The detention report requested that Kymberly continue to be detained in foster care because there was a substantial danger to Kymberly's physical or emotional health and there was no reasonable means by which to protect her without removing her from her parents' physical custody. (Decl. Boley, Ex. A at 8). A hearing was set for September 14, 2006.[3] (Decl. Boley, Ex. A at 6).

On September 8, 2006, plaintiff's counsel, Jason Davis, filed an Order for Prisoner's Appearance at Hearing Affecting Prisoner's Parental Rights so that plaintiff could appear at the September 13, 2006 hearing. (Decl. Boley, Ex. B). That same day, an Alameda County judicial officer issued an order to deliver plaintiff into the custody of the Alameda County Deputy

---

[2] Plaintiff alleges in his amended complaint that "of the 8 listed reasons [for DCFS taking protective custody of Kymberly], only one was proven to be true." (Am. Compl. at 2). Plaintiff does not specify which reason was proven true but adds "[o]nce the other 7 were unproven [DCFS] and Hobbs created various other claims to keep this farce of a case alive." (Id.). Plaintiff explains neither how or when the one reason was proven true nor how or when the remaining seven were proven untrue.

[3] The hearing actually was held on September 13, 2006. (Decl. Boley, Ex. E.)

Sheriff for the hearing. (Id.).

On September 13, 2006, Shaddick filed a jurisdiction report which repeated the statements made in the detention report. (Decl. Boley, Ex. C). Shaddick asked that the court find the allegations in the jurisdiction report to be true and recommended that Kymberly remain in foster care for two weeks until she could join her mother at a residential drug treatment program, Project Pride. (Decl. Boley, Ex. C; see Am. Compl. at 2).

At the hearing on September 13, 2006, plaintiff signed a Waiver of Rights – Juvenile Dependency form on which he indicated that he read and understood the petition filed by Shaddick, that he requested the court to appoint him an attorney and that he wished to submit the petition on the basis of the social worker's or probation officer's report and other documents, if any. (Decl. Boley, Ex. D). Plaintiff also indicated that by submitting the petition on the social worker's report, he was his waiving rights to: (1) a trial or hearing; (2) the right to see and hear witnesses who testify; (3) the right to cross-examine witnesses, the social worker or probation officer who prepared the report and the witnesses' statements contained therein; (4) the right to testify on his own behalf and to present his own evidence and witnesses; (5) the right to use the authority of the court to compel witnesses to come to court and produce evidence; and (6) any privilege against self-incrimination in the proceeding. (Id.). He also indicated that he understood that: (1) if he submitted the petition on the report, the court would probably find the petition true; (2) if the petition were found true and the child was declared a dependent of the court, the court may assume custody of the child and not offer or provide reunification services to plaintiff; and (3) if the court assumed and retained custody of the child for 12–18 months it would make a permanent plan for Kymberly that could result in the termination of plaintiff's parental rights. (Id.). After plaintiff waived the aforementioned rights, his attorney indicated by signature that he explained to plaintiff his rights and the consequences of submitting the petition. (Id.).

A minute order from the September 13, 2006 hearing indicated that both plaintiff and the child's mother were present, that the reports by Shaddick and DCFS were admitted into evidence and that the parents had waived the aforementioned rights. (Decl. Boley, Ex. E at 1). The court

4

1  ordered plaintiff and Kymberly's mother to return to the courtroom on September 28, 2006[4] for
2  an uncontested jurisdictional hearing. (Id. at 1–2).

3        On October 3, 2006, Shaddick filed an addendum report wherein she recommended that
4  Kymberly Ray be committed to DCFS for suitable placement with her mother as long as her
5  mother remained in residential drug treatment. (Decl. Boley, Ex. F at 3). Shaddick also stated
6  that there was clear and convincing evidence that parental reunification services should be
7  denied to plaintiff, as he was incarcerated on serious charges, including twenty-seven counts of
8  armed robbery, and he would "more than likely" not be able to reunify with his daughter in the
9  time provided by law. (Id. at 4). Shaddick went on to say that DCFS did not believe there
10 would be a detriment to Kymberly if reunification services were denied to plaintiff, and any
11 detriment that might incur would be mitigated by the child's placement with her mother, who
12 was receiving reunification services. (Id.).

13       A minute order from the October 3, 2006 hearing indicated that both parents appeared by
14 separate counsel at the hearing, that all reports from DCFS were admitted into evidence, and that
15 Kymberly would remain in the custody of DCFS and reside in the residential treatment facility
16 with her mother. (Decl. Boley, Ex. G at 1). The court adjudged Kymberly a dependent child
17 of the court, denied reunification services to plaintiff, and transferred the matter to DCFS for
18 monitoring. (Id.).

19

20 **II.    Defendant Hobbs' Involvement in Managing Kymberly Ray's Case**

21       In October 2006, Kymberly's case was assigned to DCFS family maintenance worker
22 defendant Hobbs. (See MSJ, Decl. Nathan Hobbs ("Decl. Hobbs"), p. 1, ¶ 1 & p. 2, ¶ 3). As a
23 family maintenance worker, defendant Hobbs was required to monitor the children on his
24 caseload and to implement corresponding court orders. (Id., ¶. 1–2, ¶ 2). Defendant Hobbs also
25 was responsible for reporting to the court on a regular basis regarding the children's progress.
26 (Id.). Defendant Hobbs had no role in the initial removal of Kymberly Ray from her home, the
27 filing of the juvenile dependency petition with the court, the finding by the court that Kymberly
28

---

[4] The hearing was continued to October 3, 2006. (Decl. Boley, Ex. G at 1).

5

was properly in its jurisdiction or the order issued by the court denying reunification services to plaintiff. (Decl. Hobbs, p. 2, ¶ 3; see Opp. at 6 & 14).

On March 7, 2007, defendant Hobbs filed a status review report with the court, his first appearance in the proceedings. (See Decl. Hobbs, p. 2, ¶ 5; Decl. Boley, Ex. H). In this report, defendant Hobbs stated that he had received information from the residential treatment program where Kymberly and her mother were residing that Kymberly had "perform[ed] sexually explicit acts on two boys (age 5 and 8)," displayed "other forms of sexualized behavior" and exhibited "boundary/personal space issues" with staff. (Decl. Boley, Ex. H at 7; see Decl. Hobbs, p. 2, ¶ 5; Am. Compl. at 4 & 7). Defendant Hobbs stated that Kymberly was receiving counseling for these issues. (Decl. Hobbs, p. 2, ¶ 5; Decl. Boley, Ex. H at 7–8). Defendant Hobbs' report incorporated the allegations of the August 29, 2006 Petition submitted by Shaddick and recommended that the court retain jurisdiction over Kymberly for another six months until her mother completed her residential treatment program. (Decl. Boley, Ex. H at 1 & 4). Defendant Hobbs did not discuss any recommendations pertaining to plaintiff in this report. (Decl. Hobbs, p. 2, ¶ 6; see Decl. Boley, Ex. H).

A minute order from the March 16, 2007 hearing indicated that both parents' counsel were present. (Decl. Boley, Ex. I at 1). The court adopted defendant Hobbs' March 16, 2007 findings, retained jurisdiction over Kymberly, and gave defendant Hobbs permission to transport Kymberly to see her father in custody. (Id. at 1–2).

On March 20, 2007, plaintiff was convicted of twenty-one counts of armed robbery with enhancements for utilizing firearms and knives in the commission of the crimes and for inflicting great bodily harm. (Decl. Boley, Ex. O). Plaintiff was sentenced to thirty-eight years and four months in state prison. (Id.).

Defendant Hobbs filed a second status review report on August 14, 2007. (Decl. Boley, Ex. J). In this report, defendant Hobbs stated that Kymberly and her mother were still living at the residential treatment program and that plaintiff was serving his state prison sentence at San Quentin State Prison. (Id. at 2). Defendant Hobbs then stated that he had made two attempts to bring Kymberly to visit plaintiff, but that they were unsuccessful. (Id. at 6). Defendant also

6

indicated in this report that there was a suspicion of child abuse by plaintiff, based on the following alleged incident:

> In May it was reported that the minor told another four-year-old Project Pride resident to insert a toy shark down the back of her pants. When another [] resident talked to the minor about the incident, the minor reportedly disclosed that "My [d]ad touched me there." This alleged disclosure prompted a CALICO Center Interview . . . on 5/24/2007[;] however the forensic interview yielded no evidence of sexual maltreatment. Nevertheless, a strong suspicion remains among the therapists and program staff that the minor may have endured some form of sexual abuse.

(Id. at 5-6).

Defendant Hobbs also stated in this report that he believed visitation with plaintiff was not advisable at the time because: "1) the minor becomes upset when the father is mentioned and does not want to visit him, 2) there are suspicions of the father's role in sexually inappropriate behavior toward the minor, and 3) the father is placed in a high-security out-of-county state prison." (Decl. Boley, Ex. J at 8). Defendant Hobbs recommended that the court retain jurisdiction over Kymberly, but did not make any custody or reunification recommendations with respect to plaintiff. (Id. at 11–12).

A minute order from the August 24, 2007 hearing indicated that the mother appeared represented by counsel and that plaintiff appeared by counsel, Erlinda Castro. (Decl. Boley, Ex. K at 1). The court adopted defendant Hobbs' August 14, 2007 findings and retained jurisdiction over Kymberly. The court did not make any orders regarding plaintiff. (Id. at 1–2).

On February 13, 2008, defendant Hobbs filed a final status review report regarding Kymberly's custody. (Decl. Boley, Ex. L). Defendant Hobbs recommended in this report that the court terminate its jurisdiction over Kymberly and award custody to her mother. (Id. at 11–12). The report did not make any recommendations pertaining to plaintiff, but noted that he was now incarcerated at High Desert State Prison in Susanville (Lassen County) California. (Id. at 6).

On February 19, 2008, the court entered a final judgment regarding custody of Kymberly, which terminated its jurisdiction over Kymberly and awarded custody to her mother. (Decl. Boley, Ex. M). The court did not award any visitation rights to plaintiff. (Id.).

7

**DISCUSSION**

**I.    Standard of Review**

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. Id. "Sweeping conclusory allegations will not suffice to prevent summary judgment." Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988). If the nonmoving party fails to make the requisite showing, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323.

**II.    Claims**

In his amended complaint, Plaintiff alleges that defendants Hobbs and DCFS made defamatory statements that injured plaintiff's reputation and caused him to lose parental rights,

8

including custody of and visitation rights to his daughter, Kymberly. Specifically, he alleges that Hobbs and DCFS made false statements in their reports, including the following: (1) that Kymberly was the "aggressor" of inappropriate sexual behavior with other children at the residential treatment program; (2) that plaintiff physically abused Kymberly's mother in front of the child; (3) that plaintiff had a substance abuse problem; (4) that the family trailer did not have running water, a working refrigerator or toilet facilities; (5) that Kymberly said that her father had engaged in sexual maltreatment of her; and (6) that there were suspicions on the part of Project Pride staff that plaintiff had engaged in sexual maltreatment of Kymberly. (Am. Compl. at 2 & 4–8). Plaintiff also alleges that by allowing the juvenile court judge to read these allegedly defamatory statements, defendants violated his due process rights. (Id. at 8).

### A.   Defamation Claim Arising Under 42 U.S.C. § 1983

Generally, "defamation" refers to the publication of false statements about a party and may be alleged as a cause of action under state tort law. In California, a written defamatory statement, known as "libel," is defined as "a false and unprivileged publication by writing . . . which exposes any person to hatred, contempt, ridicule or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code, § 45.

An allegation of defamation, without more, does not state a claim under 42 U.S.C. § 1983, even where, as here, the alleged defamatory statements are made under color of state law. See Paul v. Davis, 424 U.S. 693, 701–10 (1976); see also Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (claim of slander by police officer may allege tort claim in state court, but is not cognizable in federal court because there is no violation of a federally-protected right). This is so because a person's reputation, standing alone, is not a liberty or property interest protected by due process – i.e., an interest sufficient to give rise to a federal civil rights action – unless it is accompanied by "some more tangible interests." Paul, 424 U.S. at 701. In defamation jurisprudence, this has become known as the "stigma plus" test. See Siegert v. Gilley, 500 U.S. 226, 234 (1991).

9

Alteration or extinguishment of a right or status previously recognized by state law constitutes such a "tangible interest" and satisfies the "stigma plus" test. Paul, 424 U.S. at 711. "[T]here is no question that parents have a constitutionally protected liberty interest in making decisions about the care, custody, and control of their children." Miller v. California, 355 F.3d 1172, 1175 (9th Cir. 2004); see also Troxel v. Granville, 530 U.S. 57, 66 (2000) (parents have a "fundamental right" to make decisions concerning the care, custody, and control of their children). Indeed, this situation presents circumstances "sufficient to invoke the procedural guarantees contained in the Due Process Clause of the Fourteenth Amendment." Miller, 355 F.3d at 1175; see Troxel, 530 U.S. at 66 ("it cannot . . . be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children"). It necessarily follows, then, that parents are entitled to certain procedural protections before their fundamental right to make decisions regarding the care, custody and control of their children are altered or extinguished. Those procedural protections are, of course, notice and an opportunity to be heard.

### B.   Analysis of Plaintiff's Defamation Claim against Defendant Hobbs

As an initial matter, the court notes that defendant Hobbs did not become involved in managing Kymberly Ray's case until long after her initial removal from the home following plaintiff's arrest for armed robbery, the filing of the juvenile dependency petition with the court, the finding by the court that Kymberly was properly in its jurisdiction, the court's ultimate determination that Kymberly was a dependent child of the court, its decision to deny plaintiff reunification services and transferring the matter to DCFS for monitoring. (Decl. Hobbs, ¶ 3 at 2.) Even plaintiff concedes as much. (See Opp. at 6 & 14). The court further notes, and plaintiff "agrees[, that] defendant Hobbs did not make any of the statements contained in the 'original dependency proceeding.'" Id. at 6. Plaintiff nonetheless seeks to hold defendant Hobbs liable because he "became a party when he failed to correct the unfounded allegations" set forth in the dependency petition filed by Shaddick. Id.

Plaintiff cites to no authority, and the court is unaware of any, that points to a

constitutional duty placed on Hobbs to investigate and/or correct the allegations set forth by Shaddick in the juvenile dependency petition. Given that plaintiff submitted the juvenile dependency petition without contesting any of the allegations contained therein – after being advised that if he did so the court would probably find the petition true – it is unclear how defendant Hobbs would have been on notice that there was any dispute as to the accuracy of the allegations. As noted earlier, although plaintiff alleges that seven of the eight allegations in the juvenile dependency petition were not proven, he fails to point to any evidence that supports his assertion.[5] "Sweeping conclusory allegations will not suffice to prevent summary judgment." Leer, 844 F.2d at 634.

Perhaps most fatal to plaintiff's claim is that at the first opportunity he had to dispute the allegations in the juvenile dependency petition – the September 13, 2006 jurisdictional hearing at which plaintiff appeared in person – he instead waived his constitutional rights and submitted the petition on the basis of Shaddick's report, implicitly conceding the truth of the allegations. And, on October 3, 2006, when plaintiff again had an opportunity to dispute the allegations – in person – he again failed to object to the admission of Shaddick's reports and the information contained therein. It was at this hearing that the juvenile court adjudged Kymberly a dependent child of the court, denied reunification services to plaintiff, and transferred the matter to DCFS – ultimately to defendant Hobbs – for monitoring. Even after defendant Hobbs became involved in monitoring Kymberly's case, the record shows plaintiff was represented by counsel at the juvenile dependency proceedings and that the court adopted the findings in defendant Hobbs' written reports without any objection by plaintiff through counsel.

Thus, the record before the court demonstrates that after plaintiff was arrested and juvenile dependency proceedings were initiated regarding Kymberly Ray, up until the time the juvenile court terminated its jurisdiction over Kymberly, awarded custody to her mother and terminated plaintiff's parental rights, plaintiff received more than sufficient procedural

---

[5] Had he done so, it is possible his claim against Hobbs might have presented a genuine issue for trial sufficient to survive summary judgment. See Costanich v. DSHS, 627 F.3d 1101, 1115 (9th Cir. 2010) (reversing district court's grant of summary judgment where plaintiff produced evidence showing that social worker deliberately falsified evidence in a child abuse investigation and included false evidentiary statements in a supporting declaration).

11

1 protections guaranteed by due process. See Paul, 424 U.S. at 711. Specifically, plaintiff
2 received notice of the juvenile court dependency proceedings, appeared in person at both
3 hearings, waived his constitutional rights regarding the proceedings and submitted the petition
4 without challenging any of the evidence presented therein.

5 On this record, plaintiff simply has failed to go beyond the pleadings and, by his own
6 affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial"
7 on his defamation claim against defendant Hobbs. See Fed. R. Civ. P. 56(e). Due to plaintiff's
8 failure to identify, with reasonable particularity, evidence demonstrating a genuine issue for trial,
9 defendant Hobbs is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e); Celotex, 477
10 U.S. at 323.[6]

### C. Analysis of Plaintiff's Defamation Claim Against DCFS

Local government entities, such as DCFS, are "persons" subject to liability under 42 U.S.C. 1983 where official policy or custom causes a constitutional tort. Monell v. Dep't. of Social Servs., 436 U.S. 658, 690 (1978). Here, plaintiff has not provided any evidence that supports his conclusory allegations of liability against DCFS, specifically that any of DCFS' policies caused the alleged defamatory statements. Even if plaintiff had submitted sufficient evidence to defeat summary judgment as to defendant Hobbs, DCFS cannot be held liable simply because it was Hobbs' employer. See Monell 436 U.S. at 691 (under no circumstances is there respondeat superior liability under 42 U.S.C. § 1983, i.e. solely because one is responsible for the actions or omissions of another).

As was the case with his allegations against defendant Hobbs, plaintiff again has failed to "set forth specific facts showing that there is a genuine issue for trial" on his defamation claim against defendant DCFS. See Fed. R. Civ. P. 56(e). Plaintiff's "sweeping conclusory allegations" against DCFS are simply insufficient to preclude summary judgment. Leer, 844 F.2d at 634. Due to plaintiff's failure to identify, with reasonable particularity, evidence that any

---

[6] The Court's finding that defendant Hobbs is entitled to summary judgment as a matter of law on plaintiff's defamation claim obviates the need to address defendant Hobbs' arguments regarding his entitlement to absolute or qualified immunity.

constitutional tort was the result of official DCFS policy or custom, defendant DCFS is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 323.

## CONCLUSION

Plaintiff having failed to show that there are triable issues of material fact, defendants' motion for summary judgment (Docket No. 15) is **GRANTED** as to all claims against all defendants, who are entitled to judgment as a matter of law.

The clerk shall terminate the pending motion, enter judgment in favor of defendants, and close the file.

**IT IS SO ORDERED**.

DATED: February 22, 2011

SUSAN ILLSTON
United States District Judge